AFFIDAVIT

I, Christopher J. Kefalas, being duly sworn, state as follows:

1.   I have been employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since 2015. I received a master's degree in Criminal Justice from Northeastern University in 2014 and a bachelor's degree in Criminology from Stonehill College in 2012.

2.   As an ATF Special Agent, I am responsible for the investigation of violations of and the enforcement of federal firearms laws.  I am presently assigned to ATF's Bridgewater Field Office,  where I am one of a group of Special Agents who work with state and local law enforcement to uncover violations of laws specifically related to firearms trafficking, firearms possession by prohibited persons, and use of firearms in furtherance of drug trafficking crimes, in southeastern Massachusetts.

3.   During my tenure with ATF, I have participated in dozens of investigations and have had training in various aspects of firearms' investigations.  I have conducted surveillance, worked with confidential informants, participated in investigations using court-authorized interception of wire and electronic communications. During my law enforcement career, I have also participated in the preparation and execution of arrest warrants and search warrants.

1

4.   I personally participated in the investigation of **ANDREW BARTLETT** (**"BARTLETT"**).I have reviewed **BARTLETT**'s criminal history and criminal convictions and determined **BARTLETT** to have been convicted of, among other offenses, the following crimes:

- Possession of Firearm Without Permit, Plymouth District Court Docket #9559CR1355C
- Assault & Battery Dangerous Weapon, Bristol Superior Court Docket #36383

Based on my training and experience, I am aware that both of these offenses are punishable for a period in excess of one year under Massachusetts law.

5.   I am familiar with the facts and circumstances of this investigation based upon: (a) my personal knowledge and involvement in the investigation; (b) my discussions with fellow agents and state/local law enforcement personnel who assisted in the investigation; (c) interviews of witnesses; (d) my review of reports; and (e) my experience and training as a criminal investigator. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested criminal complaint, I have not set forth every fact learned during the course of the investigation.

6.   Based on my training and experience, I am aware that Title 18, United States Code, Section 922(g)(1) makes it a federal offense for any individual who has previously been convicted of a felony

offense to possess a firearm or ammunition in or affecting interstate commerce. Having so stated, I make this affidavit in support of a criminal complaint charging **BARTLETT** with being a felon-in-possession of a firearm and ammunition in violation of that statute.

7. On September 26, 2018, this court issued Search Warrants authorizing the search of 76 Hart Street Unit B, Taunton, MA and a gray Nissan Altima bearing Massachusetts License Plate Number 5XY537, the residence and automobile of **BARTLETT**. A copy of my affidavit submitted in support of the requested Search Warrants is attached to this affidavit as Exhibit 1 and is incorporated herein.

8. Myself and other agents went to 76 Hart Street Unit B, Taunton, MA this morning at 5:00am to execute the Search Warrants issued by this Court. After making entry, we found **BARTLETT,** a woman named Jennifer Lounge, and Lounge's two children who came down from the second floor. We asked all four persons to step outside briefly, and handcuffed them while we cleared the house and ran a K-9 trained to identify ballistics evidence through it. We then brought all four persons back inside after we had determined that the house was clear. Lounge and her two children were asked to sit in the living room and **BARTLETT** was brought in the kitchen where I Mirandized him and he stated that he understood the warnings. I advised **BARTLETT** who I was, told him that we were there to execute federal search warrants authorizing the seizure of, among other things, firearms or

3

ammunition.

9. We then started to search. Almost immediately, Agents recovered a blue canvas bag in an area that the dog had reacted to. Inside, they found a magazine that contained 6 rounds of .45 caliber ammunition.

10. After we found the ammunition, I immediately went back downstairs and took **BARTLETT** outside for the purpose of bringing him to the Taunton Police Department. I told **BARTLETT** that we had found the ammunition and that he was going to be charged with it. I then asked him where the gun was and explained to **BARTLETT** that if he told us where the gun was, we could avoid unduly disturbing his residence. **BARTLETT** then told me that the gun was underneath the bottom sheet of his mattress.

11. Once **BARTLETT** told me where the gun was, I went upstairs to the bedroom where **BARTLETT** and Lounge had been sleeping and advised the agents to look under the bottom sheet of the mattress. When they did, they found a black firearm right where **BARTLETT** said it would be. In later conversations with **BARTLETT** at the Taunton Police Department (after he had been re-Mirandized), he specifically admitted that the charged firearm and ammunition was his and claimed he had bought the gun two weeks ago in Brockton.

12. The firearm located in **BARTLETT**'s bedroom was a black Smith & Wesson M&P .45 caliber semi-automatic pistol that bore serial

number MRL5530 ("the charged firearm").  As already noted, we also recovered a magazine that fit the charged firearm that contained six rounds of .45 caliber ammunition.[1] The charged firearm was reported stolen out of Middleborough, Massachusetts in 2012.

13.  I inspected both the charged firearm and the rounds of ammunition recovered from the magazine in **BARTLETT**'s bedroom.  Based on my training and experience, the charged firearm is a "firearm" within the meaning of 18 U.S.C. §921(3) and the six rounds recovered from the magazine are "ammunition" within the meaning of 18 U.S.C. §921(17)(A).

14.  The firearm and ammunition were also examined by ATF S/A Pat Briody, who is trained to perform interstate commerce nexus examinations.  S/A Briody examined the charged firearm and the six rounds of ammunition recovered, and determined that all six rounds of ammunition had been manufactured outside Massachusetts, meaning that each round had traveled across state lines or international boundaries prior to being seized in Taunton on September 28, 2018. He also determined that, although the charged firearm was likely assembled in Massachusetts by Smith & Wesson, the frame of the weapon was manufactured outside Massachusetts and that the charged firearm

---

[1] Two additional magazines were also recovered as was a single bullet in the room of Lounge's older child.  This round was seized but is not being charged at this time.

also has the nexus with interstate commerce required under 18 U.S.C. §922(g)(1).

15.  Based on the foregoing, I submit that there is probable cause to believe that, on or about September 28, 2018, **ANDREW BARTLETT,** having been convicted of a crime punishable by a term of imprisonment exceeding one year, did possess, in and affecting commerce, a firearm and ammunition in violation of Title 18, United States Code, Section 922(g)(1).

CHRISTOPFER KEFALAS
SPECIAL AGENT, ATF

Sworn and subscribed to before me this 28th day of September, 2018.

JUDITH G. DEIN
U.S. MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

# EXHIBIT 1

<u>AFFIDAVIT</u>                          MJ-18-5117-JGD

                                        MJ-18-5118-JGD

I, Christopher J. Kefalas, being duly sworn, states:

1.    I have been employed as a Special Agent with the
Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and
have been so employed since 2015. I received a master's degree
in Criminal Justice from Northeastern University in 2014 and a
bachelor's degree in Criminology from Stonehill College in 2012.

2.    As an ATF Special Agent, I am responsible for the
investigation of violations of and the enforcement of federal
firearms laws.  I am presently assigned to ATF's Bridgewater
Field Office,  where I am one of a group of Special Agents who
work with state and local law enforcement to uncover violations
of laws specifically related to firearms trafficking, firearms
possession by prohibited persons, and use of firearms in
furtherance of drug trafficking crimes, in southeastern
Massachusetts.

3.    During my tenure with ATF, I have participated in
dozens of investigations and have had training in various
aspects of firearms' investigations.  I have conducted
surveillance, worked with confidential informants, participated
in investigations using court-authorized interception of wire
and electronic communications.  During my law enforcement

career, I have also participated in the preparation and execution of arrest warrants and search warrants.

4.   I have personally participated in the investigation of **ANDREW BARTLETT,** a convicted felon with a date of birth of XX/XX/1975, since February 2018. I have reviewed the criminal history and criminal convictions of **BARTLETT** and determined **BARTLETT** to have been convicted of the following:

- Possession of Firearm Without Permit, Plymouth District Court Docket #9559CR1355C
- Assault & Battery Dangerous Weapon, Bristol Superior Court Docket #36383

5.   I am familiar with the facts and circumstances of this investigation based upon: (a) my personal knowledge and involvement in the investigation; (b) my discussions with fellow agents and officers who assisted in the investigation; (c) my review of reports and internet searches; and (d) my experience and training as a criminal investigator. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth every fact learned during the course of the investigation.

## INTRODUCTION

6. I am submitting this affidavit in support of an application for the issuance of a Search Warrant to be executed

2

at 76 Hart Street Unit B, Taunton, MA ("**TARGET LOCATION #1**") and at a 2005 Gray Nissan Altima bearing  Massachusetts Registry of Motor Vehicles license plate number 5XY537 ("**TARGET LOCATION #2**").  As set forth below, these ARE believed to be the residence and automobile utilized by **BARTLETT**.

7. As more fully described below, I assert that there is probable cause to believe that **BARTLETT** has lived at **TARGET LOCATION #1** and driven **TARGET LOCATION #2** during periods of time since April 20, 2018.  **BARTLETT** was also believed to be living at **TARGET LOCATION #1** and driving **TARGET LOCATION #2** at the time of shooting incidents occurring between the months of October 2017 through April 2018, as described in detail later in this affidavit.

8. Thus, as described more fully below, there is probable cause to believe that evidence of **BARTLETT'S** violations of the federal firearms laws exists at the Target Locations, including but not limited to, the firearm utilized in the shooting incidents described in further detail in paragraphs 16-30 of this affidavit, illegally possessed ammunition, and the cellular telephones utilized during the time frame of this investigation.

## DESCRIPTION OF THE LOCATIONS TO BE SEARCHED AND EVIDENCE THAT BARTLETT RESIDES AT THE TARGET LOCATION 1 AND USES TARGET LOCATION 2

9. **TARGET LOCATION #1** (76 Hart Street Unit B, Taunton, MA) is described as follows:

### "TARGET LOCATION #1"

**TARGET LOCATION #1** is a two-story residential duplex in which unit B occupies the right side of the residence.  76 Hart Street has white vinyl siding and blue shutters. The driveway associated with 76 Hart Street Unit B is on the right side of the residence. The front door is the door to the right of the front of the residence and is accessible via Hart Street while there is a side door to the residence accessible by the referenced driveway. **TARGET LOCATION #1** also has a back door which faces outward toward the backyard. **TARGET LOCATION #1** is believed to be owned and rented out by Azhar and Robina Khan, rented by Jennifer Lounge, DOB: XX/XX/1978, and occupied by Lounge and **BARTLETT**.  **TARGET LOCATION #1** is more fully described in Attachment 2 to this affidavit.

### TARGET LOCATION #2

10.   Target Location #2 is a gray 2005 Nissan Altima bearing Massachusetts Registry of Motor Vehicles license plate number 5XY537 and registered to **ANDREW BARTLETT**.  During the

course of this investigation, BARTLETT has been seen driving this car.  The Gray Nissan was also found near BARTLETT at approximately 10:56 p.m. on February 20, 2018, when the Bridgewater Police Department responded to 232 Broad Street on a call for service indicating an individual had been shot and found BARTLETT suffering from a gunshot wound.  The gray Nissan was found in the rear of the 232 Broad Street.  Officers responding on that call noted that the Nissan appeared to have holes consistent with ballistics damage that appeared to be rusted and therefore older.

11. I have conducted a query of the City of Taunton Online Assessor's Database which revealed that TARGET LOCATION #1 is a two-family residential dwelling (Parcel Identification #5577) and the owner of record is Azhar and Robina Khan. As set forth below, BARTLETT has TARGET LOCATION #1 listed as his residence according to Massachusetts Registry of Motor Vehicles records. The driver's license of BARTLETT is active and is valid until April 6, 2020. On June 15, 2018, Taunton Police Department Officers arrested BARTLETT at TARGET LOCATION #1 on a probation violation as documented in Taunton Police Department Arrest Report #18TAU-15743-AR. This arrest stemmed from an earlier arrest of BARTLETT outside of 45 Webster Street in Fall River,

Massachusetts as documented in Fall River Police Department
Arrest Report #18-2134-AR.

12.   45 Webster Street in Fall River, Massachusetts will
later be explained to be the current residence of Jenna
Wainwright, DOB: XX/XX/1987. During the course of the
investigation of **BARTLETT**, I have identified Wainwright as the
ex-girlfriend of **BARTLETT**. **TARGET LOCATION #1** is also listed as
the residence of **BARTLETT** in the following local police
department reports: Fall River Incident Report #18-532-OF from
January 23, 2018 in which a shooting is documented outside of 45
Webster Street in Fall River, Massachusetts; Bridgewater Police
Department Incident Report #18-1797-OF from February 20, 2018 in
which **BARTLETT** himself was found with a gunshot wound on a porch
at 232 Broad Street in Bridgewater, Massachusetts; Fall River
Police Department Arrest Report #18-2134-AR from June 14, 2018
which was previously listed in this affidavit as a report
documenting the arrest of **BARTLETT** for Vandalizing Property,
Assault & Battery on a Family/Household Member, and Disturbing
the Peace outside the residence of his ex-girlfriend Jenna
Wainwright; and, Taunton Police Department Arrest Report #18TAU-
15743-AR from June 15, 2018 as previously listed in this
affidavit detailing the arrest of **BARTLETT** at 76 Hart Street
Unit B in Taunton, Massachusetts stemming from a probation
violation deriving the incident detailed in Fall River Police

6

Department Arrest Report #18-2134-AR. All reports identified in this paragraph list **TARGET LOCATION #1** as **BARTLETT**'s residence and this is the place for which permission is sought to be searched.

13. In addition to this, I have spoken with a supervisor within the Fall River District Court probation office who indicated that **BARTLETT** is currently on pretrial supervision through their office and has been on a GPS monitoring bracelet in which **BARTLETT** has a curfew between the hours of 8:00 p.m. and 5:00 a.m. since June 2018. This curfew and GPS bracelet requires **BARTLETT** to be within the confines of **TARGET LOCATION #1** between the hours of 8:00 p.m. and 5:00 a.m.

14. On August 23, 2018, I conducted surveillance of **TARGET LOCATION #1**. At approximately 6:15 a.m., I observed **BARTLETT** exit the right side door of the residence and enter the front driver's seat of the gray 2005 Nissan Altima bearing Massachusetts Registry of Motor Vehicles license plate number 5XY537 (**TARGET LOCATION #2**). At approximately 6:35 a.m., I observed a Nissan SUV pull into the driveway of **TARGET LOCATION #1**. I then observed **BARTLETT** exit the **TARGET LOCATION #2** and enter the passenger's seat of the Nissan SUV which had pulled into the driveway of 76 Hart Street Unit B, in Taunton, Massachusetts moments earlier. The Nissan SUV then exited the

7

driveway and proceeded away from the residence with **BARTLETT** as the passenger.

15. On August 24, 2018, I conducted additional surveillance of **TARGET LOCATION #1**. At approximately 6:14 a.m., I observed **BARTLETT** exit the side door of **TARGET LOCATION #1** and unlock the gray 2005 Nissan Altima before returning inside the residence. At approximately 6:18 a.m., I observed **BARTLETT** exit the side door of the residence and walk toward the **TARGET LOCATION #2** and drive away from the residence.

16. On September 24, 2018, I conducted further surveillance of **TARGET LOCATION #1**. At approximately 6:23 a.m., I observed **BARTLETT** exit the side door of **TARGET LOCATION #1** while carrying a black bag. I also observed a third party vehicle pull into the driveway at this time and observed **BARTLETT** enter the passenger door of the vehicle. This vehicle then left the area of **TARGET LOCATION #1** until approximately 7:01 a.m. when the vehicle pulled back into the driveway of **TARGET LOCATION #1** and dropped off **BARTLETT**. I then observed **BARTLETT** re-enter **TARGET LOCATION #1**. I also observed **TARGET LOCATION #2** parked in the driveway of **TARGET LOCATION #1**.

## FACTS

### SHOOTING INCIDENT #1 – Brockton Police Department Incident Report #17-5898-OF

17. On October 2, 2017, at approximately 11:25 p.m., the Brockton Police Department responded to a shots fired call in the area of 36 Cleveland Avenue in Brockton, Massachusetts. On scene, Brockton Police Department officers recovered four (4) spent .45 caliber shell casings at the scene. A witness ("WITNESS A") told Brockton Police Department officers that they had observed a gray motor vehicle, possibly a Nissan Altima, leave from the scene of the shooting. As described in this affidavit, **BARTLETT** drives a gray 2005 Nissan Altima bearing Massachusetts Registry of Motor Vehicles license plate number #5XY537 (**TARGET LOCATION #2**). The manufacturer of the shell cases recovered included three (3) R-P .45 caliber shell casings and one (1) Federal .45 caliber shell casing.

### SHOOTING INCIDENT #2 – Brockton Police Department Incident Report #17-7367-OF

18. Prior to detailing Shooting Incident #2, an explanation of Brockton's ShotSpotter system is required. ShotSpotter is a system in which acoustic sensors are strategically placed in a coverage area. When a gun is fired, the sensors detect shots fired. Audio triangulation pinpoints gunfire location and

9

machine-learning algorithms analyze the sound. If the sound and
visual audio signature match gunfire, it is passed along to the
manufacturer's Incident Review Center ("IRC"). ShotSpotter is
the only gunshot detection system to include human acoustic
expertise for enhanced assessment of possible gunshots. Acoustic
experts at the IRC review each incident in seconds and add
tactical intelligence such as "multiple shooters" and "back of
building." Confirmed gunshots are published. Notifications are
sent to dispatch centers, MDTs, and smartphones. These alerts
contain a full set of contextual information. Total time from
gunshot to alert is usually less than 60 seconds. Alerts can
trigger other systems such as cameras to pan, tilt, and zoom
near an incident. ShotSpotter records are preserved and
maintained for use in subsequent investigations.

19. On December 6, 2017, at approximately 7:28 p.m., the
Brockton Police Department ("BPD") responded to a ShotSpotter
notification in the area of 27 Exchange Street in Brockton,
Massachusetts.  On scene, BPD officers recovered three (3) spent
.45 caliber shell casings. The manufacturers of the shell
casings recovered included one (1) Federal .45 caliber shell
casing, one (1) MFS .45 caliber shell casing, and one (1) R-P
.45 caliber shell casing.

20. I spoke with BPD Detective George Almeida regarding the
status of the ShotSpotter system in Brockton, Massachusetts

during the time frame of Shooting Incident #2. Detective Almeida indicated that the ShotSpotter system was functional during this time frame with no known operational or other issues. Detective Almeida also stated that ShotSpotter system does not cover the entire city of Brockton.

### SHOOTING INCIDENT #3 - Fall River Police Department
### Incident Report #18-532-OF

21. On January 23, 2018, at approximately 7:58 p.m., the Fall River Police Department ("FRPD") responded to a shots fired call at 45 Webster Street in Fall River, Massachusetts. On scene, FRPD personnel recovered eight (8) spent .45 caliber shell casings and one (1) live round of .45 caliber ammunition. The breakdown of the recovered evidence includes one (1) live round of MFS .45 caliber ammunition and eight (8) spent MFS .45 caliber ammunition. The one live round of MFS ammunition and seven of the eight spent MFS .45 caliber casings were found on the ground near the east wall of the building on the south side of the property, while the additional one spent MFS .45 caliber shell casing was found on the roadway adjacent to 45 Webster Street in Fall River, Massachusetts.

22. FRPD officers interviewed a male witness (WITNESS B) who indicated that, after hearing a gunshot, he saw a white male, who was approximately 5'7", weighing between 160-180

pounds wearing a black baggy hooded sweatshirt and dark jeans fire a handgun and enter a dark gray Nissan Altima.

23. FRPD officers also located ballistics damage to a 2010 Toyota Yaris bearing Massachusetts Registry of Motor Vehicles license plate number #6FR645 that was registered to Tracy Moniz, DOB: XX/XX/1975. This vehicle had been struck in the rear driver's side windshield as well as the rear passenger's side tire. This vehicle was parked in the parking lot of 41-45 Webster Street. FRPD Officers spoke with Moniz who indicated that she had an ongoing issue with a neighbor named Jenna Wainwright. Wainwright was previously listed in this affidavit from Fall River Police Department Arrest Report #18-2134-AR. Moniz also indicated that Wainwright had an ex-boyfriend who she had seen months prior in a dark colored Nissan Altima which had bullet holes in the side of the vehicle. According to FRPD Incident Report #18-532-OF, Moniz indicated that the ex-boyfriend told her he was shot at in Taunton, Massachusetts. An officer from the Fall River Police Department queried FRPD reports for Wainwright and located one from November 12, 2017 in which Wainwright and her then boyfriend, BARTLETT, had been involved in a domestic argument. Fall River Police Department Incident Report #18-532-OF also indicated that BARTLETT has a gray 2005 Nissan Altima bearing Massachusetts Registry of Motor Vehicles license plate number #5XY537 registered to him.

24. With this information regarding **BARTLETT**, the Fall River Police Department generated a photo array with **BARTLETT** included to show to WITNESS B who described seeing a white male approximately 5'7" tall weighing approximately 160-180 pounds wearing a black baggy hooded sweatshirt and dark colored jeans. WITNESS B was unable to positively identify anyone in the photo array, though it should be noted the description provided by WITNESS B is consistent with the physical description of **BARTLETT**.

## SHOOTING INCIDENT #4 – Fall River Police Department
## Incident Report #18-1056-OF

25. On February 13, 2018 and February 15, 2018, the FRPD recovered a total of four (4) spent .45 caliber shell casings related to a shooting incident in the area outside of 34 Webster Street in Fall River, Massachusetts which took place on February 13, 2018 at approximately 2:21 a.m. Initially, the Fall River Police Department responded to a report of "three or four" shots fired in the area of Webster and Pitman Streets. Once on scene, a Fall River Police Officer located three (3) spent .45 caliber shell casings on Webster Street within a few feet of the sidewalk and driveway of 45 Webster Street. These casings consisted of two (2) Federal .45 caliber shell casings and one (1) R-P .45 caliber shell casing.

26. FRPD Officers spoke with the 9-1-1 caller in regards to the shooting. According to the police report, this person stated, "I heard three (3) shots… one (1) then two (2) more quick ones and saw a guy dressed in all black running down on Webster Street towards Alden Street." The Fall River Police Department asked this person for a more specific description of the shooter to which the witness indicated the shooter was a male, approximately 5'6"-5'7", and wearing a black hoodie, black sweatpants and black sneakers. It is important to note that BARTLETT matches the physical description being that BARTLETT is approximately 5'7" in height.

27. Two days later, on February 15, 2018, an additional spent .45 caliber R-P shell casing was located by FRPD officers in the area of 45 Webster Street. When combined with the shell casings recovered on February 13, 2018, the total number of .45 caliber shell casings recovered from the area of Shooting Incident #4 (Fall River Police Department Incident Report #18-1056-OF) is four .45 caliber shell casings. The breakdown of the manufacturers of all of the shell casings recovered in this incident include two R-P .45 caliber shell casings and two Federal .45 caliber shell casings. The FRPD officers who located the additional shell casing recovered on February 15, 2018 were drawn back to the area of this shooting incident while

conducting an after-incident patrol of the area. It should also be noted that there were no recorded or reported incidents in the area of Webster Street in Fall River, Massachusetts between the recovery of shell casing(s) on February 13, 2018 and February 15, 2018 that would result in new shell casings being discarded in the same area. This led officers to believe the shell casing recovered on February 15, 2018 was related to the shooting incident on February 13, 2018.

### SHOOTING INCIDENT #5 - Bridgewater Police Department
### Incident Report #18-1797-OF

28. On February 20, 2018, at approximately 10:56 p.m., the Bridgewater Police Department responded to 232 Broad Street on a call for service indicating an individual had been shot and required medical attention. Upon arriving on scene, Bridgewater Police Department ("Bridgewater PD") officers identified BARTLETT as the person who had been shot. BARTLETT told Bridgewater PD officers he had been shot in his vehicle by an unknown Cape Verdean male driving a black, older model Honda Accord at the intersection of Montello Street and Lawrence Street in Brockton, Massachusetts following a road rage incident. BARTLETT claimed to have driven to Bridgewater from Brockton to not have his vehicle impounded. Bridgewater PD officers located BARTLETT's gray 2005 Nissan Altima in the rear

parking lot of 232 Broad Street in Bridgewater, Massachusetts. Bridgewater Police Department officers noted approximately 2-3 rusted holes in the driver's side door that appeared to be consistent with gunshot holes. Bridgewater PD officers also noted the holes did not appear to be new.

29. The Bridgewater Police Department contacted the Brockton Police Department who indicated that the area of the shooting incident, as described by **BARTLETT**, did not appear on the ShotSpotter system as having shooting activity during the time frame in question. The Brockton Police Department further indicated that there were no ShotSpotter activations in the entire city of Brockton, Massachusetts during the night of February 20, 2018.

30. On February 21, 2018, the Bridgewater PD requested and were granted a search warrant for **BARTLETT's** vehicle (a dark gray 2005 Nissan Altima bearing Massachusetts registration number 5XY537) that was involved in Shooting Incident. Bridgewater Police Department officers located a spent MFS .45 caliber shell casing within the vehicle. The location of this casing suggests that the weapon that ejected it was fired from inside the Nissan rather than at it.1

---

1 In describing the incident to police, **BARTLETT** claimed that the unidentified Cape Verdean Male stuck a gun inside the window and shot him. While this could provide an alternate explanation regarding the origin of the shell casing, it was not considered credible in view of all the other surrounding circumstances.

31. I spoke with BPD Detective George Almeida regarding the status of the ShotSpotter system within the city of Brockton, Massachusetts during the timeframe of the Shooting Incident #5. Detective Almeida stated that the ShotSpotter was active and functional during the time frame of Shooting Incident #5. Almeida also confirmed that the area of Montello Street in Brockton, Massachusetts is within the coverage area of the ShotSpotter system within the city of Brockton.

EVIDENCE RECOVERED FROM SHOOTING INCIDENTS #1, #2, #3, #4, & #5

32. Upon review of the shell casings recovered from Shooting Incidents #1, #2, #3, #4, and #5, it should be noted that ammunition and/or shell casings of the same manufacturers were found to overlap between the referenced incidents. The similarities between incidents can be shown in detail as described below:

| SHOOTING INCIDENT | MANUFACTURER .45 CAL AMMUNITION/SHELL CASINGS | | |
|---|---|---|---|
| | MFS | FEDERAL | R-P |
| SHOOTING INCIDENT #1 | | 1 SHELL CASING | 3 SHELL CASING |
| SHOOTING INCIDENT #2 | 1 SHELL CASING | 1 SHELL CASING | 1 SHELL CASING |

| | | | |
|---|---|---|---|
| SHOOTING INCIDENT #3 | 8 SHELL CASING<br><br>1 LIVE ROUND | | |
| SHOOTING INCIDENT #4 | | 2 SHELL CASING | 2 SHELL CASING |
| SHOOTING INCIDENT #5 (BARTLETT INJURED, 1 .45 SHELL CASING RECOVERED FROM HIS CAR) | 1 SHELL CASING | | |

## NATIONAL INTEGRATED BALLISTICS IDENTIFICATION NETWORK ("NIBIN") ANALYSIS

33. All shell casings recovered at the scenes of the above referenced shooting incidents were submitted for entry into the National Integrated Ballistics Identification Network ("NIBIN"). The NIBIN Program automates ballistics evaluations and provides investigative leads. NIBIN is the only interstate automated ballistic imaging network in operation in the United States and is available to most major population centers in the United States. To use NIBIN, firearms examiners or technicians enter cartridge casing evidence into the Integrated Ballistic Identification System. These images are correlated against the database. Law enforcement can search against evidence from their jurisdiction, neighboring ones, and others across the country.

34. On January 25, 2018, the Massachusetts State Police Crime Laboratory provided a preliminary report indicating a

preliminary notification of NIBIN correlation candidate (i.e., a possible match) between the .45 caliber shell casings recovered at the Brockton Police Department Incident #17-7367-OF (Shooting Incident #2) and Brockton Police Department Incident #17-5898-OF (Shooting Incident #1). This preliminary notification is documented in detail in Laboratory Case Number 17-32081.

35. On April 12, 2018, the Massachusetts State Police Crime Laboratory provided a preliminary report indicating a preliminary notification of NIBIN correlation candidate between the .45 caliber shell casings recovered at Bridgewater Police Department Incident #18-1797-OF (Shooting Incident #5) and Brockton Police Department Incident #17-7367-OF (Shooting Incident #2). This preliminary notification is documented in detail in Laboratory Case Number 18-06724.

36. On May 2, 2018, I received into ATF custody and transported the .45 shell casings recovered in Shooting Incident #4 (Fall River Incident #18-1056-OF) to the Boston Police Department for expedited entry into the NIBIN system. After this entry, I received a verbal confirmation which indicated the shell casing tested from Shooting Incident #4 (Fall River Incident #18-1056-OF) produced preliminary correlations with Shooting Incident #1 (Brockton Police Department Incident #17-5898-OF), Shooting Incident #2 (Brockton Police Department

Incident #17-7367-OF), and Shooting Incident #5 (Bridgewater Police Department Incident #18-1797-OF).

37. Because NIBIN is an investigative lead technique, the ballistics evidence from Shooting Incidents #1, #2, #3, #4, and #5 were submitted to a trained and experienced Ballistics Examiner at the Massachusetts State Police Crime Lab for confirmatory testing. On September 20, 2018, Trooper Nuno Meideros generated a Firearms Identification Section Report detailing the physical and microscopic analysis of all shell casings related to Shooting Incidents #1, #2, #3, #4, and #5. Based upon examinations and comparisons of all above referenced evidence, Trooper Medeiros determined that all .45 caliber shell casings recovered from Shooting Incidents #2, #3, #4, and #5 and all but two .45 caliber shell casings recovered from the scene of Shooting Incident #1 were all fired from the same unknown weapon capable of chambering and firing .45 Auto caliber ammunition. Trooper Medeiros also determined the additional two .45 caliber shell casings recovered from the scene of Shooting Incident #1 have agreement of all discernible class characteristics as well as some agreement of other markings to each other as well as to all discharged cartridge casings; however, he concluded that there were insufficient quantity and quality of agreement of other markings to individualize the

mentioned two cartridge casings as having been also fired from the same unknown weapon.

## ATF INTERVIEW OF TRACY MONIZ

38. On August 1, 2018, ATF Special Agent David Simmons and I conducted an interview of Tracy Moniz. Moniz is listed as a witness and a person the Fall River Police Department has spoken with in correlation with Shooting Incident #3 (Fall River Police Department Incident #18-532-OF). During the course of this interview, Moniz provided statements consistent with statements documented in Fall River Police Department Incident Report #18-532-OF. Moniz also provided additional information regarding her relationship with Jenna Wainwright, **BARTLETT's** ex-girlfriend. Moniz stated that she had been friends with Wainwright and the two had a brief romantic relationship months prior to Wainwright dating **BARTLETT**. Moniz also described an incident separate from the shooting incidents in which Wainwright was the victim of property damage in which her vehicle was set on fire and spray painted.

## ATF INTERVIEW OF JENNA WAINWRIGHT

39. On August 2, 2018, ATF Task Force Officer (TFO) Lavar Gilbert and I interviewed Jenna Wainwright, ex-girlfriend of **BARTLETT**, at her apartment at 45 Webster Street Unit #5 in Fall River, Massachusetts. This address has been previously listed in Fall River Police Department Arrest Report #18-2134-AR, Fall

River Police Department Incident Report #18-532-OF (Shooting Incident #3), and Fall River Police Department Incident Report #18-1056-OF (Shooting Incident #4). During the course of the interview, Wainwright indicated that she believed that **BARTLETT** had committed the shootings taking place in the area of 45 Webster Street in Fall River, Massachusetts. Wainwright indicated that she had previously dated **BARTLETT** approximately one year prior to the interview and that she had known **BARTLETT** for six or seven years. Fall River Police Department Incident Report #17-7820-OF details the response of the Fall River Police Department to 45 Webster Street Apartment 5 involving Wainwright and **BARTLETT**. In this report, the Fall River Police Department noted that Wainwright and **BARTLETT** had been romantically together for the last year.

40. Wainwright also stated she has personally seen **BARTLETT** with firearms, including a .45 caliber firearm, which she indicated that **BARTLETT** would call a "four-five." Wainwright also indicated that **BARTLETT** had pulled out the firearm on Wainwright during a domestic incident at 45 Webster Street in which the police responded. Wainwright stated that **BARTLETT** hid the firearm in a boot located at the apartment prior to law enforcement arriving. Based upon the details provided by Wainwright, I believe Fall River Incident Report #17-7820-OF to be the incident in which **BARTLETT** hid the firearm within the

22

boot inside 45 Webster Street Apartment 5. As described in paragraphs 16-19 and 20-22 of this affidavit, this address is in the area of Shooting Incidents #3 and #4.

41. Wainwright also stated that **BARTLETT** kept a firearm on his person or in his Nissan Altima. Wainwright indicated that **BARTLETT** brought the firearm inside her apartment when he had previously stayed with her and this was a contributing factor to the end of their relationship.

42. On this same date, Wainwright also indicated that **BARTLETT** had caused issues with Tyrone Pina, father of Wainwright's child, on multiple occasions. I later identified Pina to have a date of birth of XX/XX/1971. Wainwright stated that **BARTLETT** had confronted Pina at a laundromat and attempted to fight Pina. Wainwright also stated she believed this to have happened in February or March of 2018. Wainwright also stated that Pina would stay with her from time to time if he did not have stable housing.

43. Wainwright also provided access to TFO Gilbert and I to a voice message left from **BARTLETT** utilizing telephone number (774)826-5291 to Wainwright on February 11, 2018 (2 days before Shooting Incident #4). Wainwright indicated that this telephone number was utilized by **BARTLETT** at the time. During this voice message, a voice identified as **BARTLETT** by Wainwright stated,

"Mami, I don't know if you're going to get this message, but I want you to grab the kids and get out that spot for two hours. I'm not kidding. My daughter is going to call you and tell you the same thing. I'm not joking. Get out that place and stay away for two hours. You understand me? Grab Liliana. Grab little man if you choose. That's on you, but I want you to grab Liliana for sure and I want you to go away go to your friend (Unintelligible) house and stay gone for two hours. I got to do what I got to do. I'm sorry." Wainwright further indicated that, during the time of the voice message, she was in a fight with her child's father, Pina, who had been staying with her at 45 Webster Street in Fall River, Massachusetts. This voice message was left for Wainwright by **BARTLETT** approximately 36-37 hours prior to Shooting Incident #4 on February 13, 2018.

44. Wainwright also indicated that **BARTLETT** had made suicidal threats prior to his arrest in June of 2018. This incident is documented in full detail in Fall River Police Department Arrest Report #18-2134-AR from June 14, 2018. This arrest led Wainwright to apply for and be granted the issuance of a restraining order against **BARTLETT**.

45. Wainwright also provided me with another known cellular telephone number for **BARTLETT** as (774) 520-4915.

## CELL SITE ANALYSIS OF RECORDS RELATING TO CELLULAR

### TELEPHONE OF BARTLETT

46. On September 13, 2018, I received intelligence analysis maps relating to cell site information previously obtained for the cellular telephone utilized by **BARTLETT**. Call detail reports with cell site information were received from Sprint for cell phone 774-826-5291 (utilized by **BARTLETT**), for the following time periods:

1. October 01, 2017–October 03, 2017 (Shooting Incident #1)

2. December 05, 2017–December 07, 2017 (Shooting Incident #2)

3. January 22, 2018 – January 24, 2018 (Shooting Incident #3)

4. February 12, 2018–February 14, 2018 (Shooting Incident #4)

Mapping analysis was conducted on these phone records. The attached maps (Attachment A) depict the date, time, and location of shooting incidents #1, #2, and #4, which are described in detail in paragraphs 17, 19-20, and 25-27 of this affidavit. Additionally, the maps depict the cell towers that cell phone 774-826-5291, known to be used by **BARTLETT**, utilized during times proximate to these shooting incidents. The general range of the towers during these call events are also depicted. Based on an overall analysis of SHOOTING EVENTS #1, #2, and #4, and the call detail reports with cell tower information for cell phone 774-826-5291 utilized by **BARTLETT**, it has been determined that on 10/02/2017 at 23:25, 12/06/2017 at 19:28, and 02/13/2018

at 02:21, the cell phone 774-826-5291 utilized by **BARTLETT** was in the general area of the shooting incidents. It should be noted, that during this investigation, ATF received information from JENNA WAINWRIGHT that **BARTLETT** did have a second cellular telephone number at one point in time and that **BARTLETT** now currently utilizes a different cellular telephone number.

### USE OF RESIDENCES BY THOSE POSSESSING ILLEGAL FIREARMS

47. Based on my experience and training as an ATF Special Agent, I know that individuals who own and possess firearms normally possess and maintain them for long periods of time because firearms are expensive and do not easily wear out. In my experience and training, firearms are unlike narcotics or currency, which are often used or exchanged soon after being obtained. Firearms are similar to tools that a person buys and maintains. Persons who own and possess firearms generally keep them in their residences unless they have a specific reason to bring them out in which case they may be carried on an individual's person or in a vehicle. It has also been my experience that persons maintain firearms along with ammunition in a convenient and safe location to afford ease of access.

48. Based on my experience and training, I also know that individuals who own and possess cellular telephones normally possess and maintain them for reasonably long periods of time

because they are also expensive, can often be subject to long-term contracts that contain substantial early termination penalties and do not easily wear out.  In my experience most individuals upgrade their phones every year or two and often retain the previous phone and have stored information transferred to the new phone.  In addition, most modern phones afford access to the internet and to social websites like Twitter, have camera capabilities, and many users tend to store photos in their cell phones which are most often maintained by the user on his person or in his residence when not outside.

### ITEMS TO BE SEIZED FROM TARGET LOCATION #1 (76 HART STREET UNIT B, TAUNTON, MA) and TARGET LOCATION #2 2005 NISSAN ALTIMA BEARING MA. REGISTRATION 5XY537

49. Based upon all of the information I have obtained during the course of this investigation, and for the reasons more specifically set forth above, I submit that there is probable cause to believe that evidence regarding **BARTLETT's** illegal firearm possession may be found in the Target Locations. More specifically, I submit that there is probable cause to believe that the items described in Attachment 3 to this affidavit will be present at the Target Locations and should be subject to seizure because they will be evidence of a crime, contraband, fruits of a crime other items illegally possessed or

property designed for use, intended for use or used in committing a crime.

## PERMISSION TO SEARCH CELLULAR TELEPHONES SEIZED AT THE TARGET LOCATIONS

50. In the event that cellular telephones are seized at the Target Locations, I am also seeking to search the software and memory of any Cellphone (Smartphone or otherwise) for the items described in Attachment 3.

51. As used in this Affidavit, the term "software and memory" refers to digital information which can be interpreted by a cellular telephone and any of its related components. Software is stored in electronic, magnetic, optical, or other digital form.   It also includes any information stored on a cellular telephone including the numbers to which and from which calls to the cellular telephone have been transmitted or received.   The term "information" includes all information stored on the aforementioned cellular telephone and on any of the memory and features of the cellular telephone.

## CONCLUSION

52. Based on the foregoing, and based on my training and experience, I submit there is probable cause to believe that the premises located at 76 Hart Street Unit B, Taunton, MA, which

are more specifically described above, presently contain the
items set forth above, and that those items constitute evidence
of the commission of a criminal offense, contraband, the fruits
of crime, and things criminally possessed within the meaning of
Federal Rule of Criminal Procedure 41(c).

Christopher J. Kefalas
SPECIAL AGENT, ATF

**Sep 26, 2018**

Sworn and subscribed to before me this _____ day of September,
2018.

JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

29

**ATTACHMENT 1**

MJ-18-5117-JGD

MJ-18-5118-JGD

**Incident #1: 10/02/2017 @ 23:25, 36 Cleveland Ave, Brockton MA**
4x .45 caliber shell casings recovered.  Witnesses observe gray motor vehicle leaving scene of shooting.

| Sprint Records 774-826-5291 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Date | Time | Start Tower | Start Face | Start Latitude | Start Longitude | End Tower | End Face | End Latitude | End Longitude | Duration |
| 10/2/2017 | 22:01:40 | 163 | 3 | 42.0585 | -71.0118 | 163 | 3 | 42.0585 | -71.0118 | 0:36:25 |
| 10/2/2017 | 22:38:55 | | | | | | | | | 0:00:00 |
| 10/2/2017 | 22:39:07 | 163 | 3 | 42.0585 | -71.0118 | 163 | 3 | 42.0585 | -71.0118 | 0:00:06 |
| 10/2/2017 | 22:39:07 | | | | | | | | | 0:00:00 |
| 10/2/2017 | 22:39:34 | | | | | | | | | 0:00:00 |
| 10/2/2017 | 22:39:54 | | | | | | | | | 0:00:00 |
| 10/2/2017 | 22:40:16 | | | | | | | | | 0:00:00 |
| 10/2/2017 | 22:42:01 | 163 | 3 | 42.0585 | -71.0118 | 163 | 3 | 42.0585 | -71.0118 | 0:02:19 |
| 10/3/2017 | 0:12:42 | 356 | 4 | 42.074444 | -71.011388 | 356 | 2 | 42.074444 | -71.011388 | 0:01:45 |
| 10/3/2017 | 0:18:01 | 310 | 2 | 42.08092 | -70.98814 | 310 | 2 | 42.08092 | -70.98814 | 0:00:27 |



Tower/Face: 356/2
Latitude: 42.07444
Longitude: -71.011388
Azimuth: 10
Beamwidth: 120

36 Cleveland Ave
Brockton, MA

Tower/Face: 310/2
Latitude: 42.08092
Longitude: -70.98814
Azimuth: 0
Beamwidth: 120

Tower/Face: 356/4
Latitude: 42.07444
Longitude: -71.011388
Azimuth: 260
Beamwidth: 120

Tower/Face: 163/3
Latitude: 42.0585
Longitude: -71.0118
Azimuth: 110
Beamwidth: 120

**Incident # 2: 12/06/2017 @ 19:28, 27 Exchange Street, Brockton MA**
**3x .45 caliber shell casings recovered**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Sprint Records 774-826-5291 | | | | | | | | | | |
| Date | Time | Start Tower | Start Face | Start Latitude | Start Longitude | End Tower | End Face | End Latitude | End Longitude | Duration |
| 12/6/2017 | 19:04:20 | | | | | | | | | 0:00:35 |
| 12/6/2017 | 19:26:27 | 356 | 4 | 42.074444 | -71.011388 | 356 | 4 | 42.074444 | -71.011388 | 0:00:41 |
| 12/6/2017 | 19:27:16 | 356 | 4 | 42.074444 | -71.011388 | 356 | 4 | 42.074444 | -71.011388 | 0:00:15 |
| 12/6/2017 | 19:27:42 | 356 | 4 | 42.074444 | -71.011388 | 356 | 4 | 42.074444 | -71.011388 | 0:00:26 |
| 12/6/2017 | 20:19:04 | 356 | 4 | 42.074444 | -71.011388 | 356 | 4 | 42.074444 | -71.011388 | 0:00:20 |
| 12/6/2017 | 20:25:33 | 356 | 4 | 42.074444 | -71.011388 | 356 | 4 | 42.074444 | -71.011388 | 0:00:17 |
| 12/6/2017 | 20:28:23 | 356 | 4 | 42.074444 | -71.011388 | 356 | 4 | 42.074444 | -71.011388 | 0:00:24 |



27 Exchange Street
Brockton, MA

Tower/Face: 356/4
Latitude: 42.0744440
Longitude: -71.011388
Azimuth: 260
Beamwidth: 120

**Incident #4: 2/13/2018 @ 02:21, 34 Webster Street, Fall River MA**
**4x .45 caliber shell casing recovered**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| Date | Time | Start Tower | Start Face | Start Latitude | Start Longitude | End Tower | End Face | End Latitude | End Longitude | Duration |
|---|---|---|---|---|---|---|---|---|---|---|
| Sprint Records 774-826-5291 |
| 2/13/2018 | 2:26:53 | | | | | | | | | 0:00:00 |
| 2/13/2018 | 3:19:17 | 322 | 3 | 41.687389 | -71.140361 | 322 | 3 | 41.687389 | -71.140361 | 0:00:18 |
| 2/13/2018 | 4:58:07 | | | | | | | | | 0:00:19 |



Tower/Face: 322/3
Latitude: 41.687389
Longitude: -71.140361
Azimuth: 120
Beamwidth: 120

34 Webster Street
Fall River, MA

MJ-18-5117-JGD

MJ-18-5118-JGD

## ATTACHMENT 2--PROPERTY TO BE SEARCHED

### TARGET LOCATION #1

76 Hart Street, Unit B, Taunton, Massachusetts is a two-story residential duplex in which Unit B occupies the right side of the residence as shown in the attached picture. 76 Hart Street has white vinyl siding and blue shutters. The driveway associated with 76 Hart Street Unit B is on the right side of the residence. The front door (shown as the front door on the right side of the residence) is accessible via Hart Street while there is a side door to the residence accessible by the referenced driveway. The residence also has a rear entrance which faces outward toward the

backyard.



## PROPERTY TO BE SEARCHED
## TARGET LOCATION #2

The vehicle to be searched is a Gray Nissan Altima bearing Massachusetts Registry

of Motor Vehicles license plate number 5XY537that is registered to **ANDREW**

**BARTLETT**. TARGET LOCATION #2 is depicted in the attached photograph

parked at 76 Hart Street, Unit B, Taunton, Massachusetts on the driveway to the right

of the residence.

**ATTACHMENT 3**

**MJ-18-5117-JGD**
**MJ-18-5118-JGD**

## Description of Potential Items to be Seized

Evidence of a crime, contraband, fruits of a crime, other items illegally possessed, or

property designed for use, intended for use, or used in committing violations of 18

U.S.C. Section 922(g)(1) including, without limitation:

1. Any and all firearms, ammunition, ammunition feeding devices, cartridges, cartridge cases, original boxes for firearms, holsters, cleaning kits and supplemental firearm devices such as silencers and/or laser sights or any other items related to firearms.

2. Records relating to income and expenditures for the acquisition, possession or use of firearms or ammunition;

3. Photographs of firearms or ammunition or of persons in possession of firearms or ammunition;

4. Books, records, receipts, notes, ledgers, copies of Emails, text messages and other papers relating to the acquisition, possession or use of firearms or ammunition;

5. Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the acquisition, possession or use of firearms or ammunition;

6. Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the Target Locations including but not limited to canceled mail, deeds, leases, rental agreements, photographs, utility and telephone bills, identification documents, and keys; and,

7. During the execution of the search warrant, law enforcement personnel shall be entitled to seize any cellular phones but shall not be entitled to search those phones without further order of the Court.


## RETURN OF SEIZED CELLULAR TELEPHONES

If the owner of a seized Cellular telephone requests that it be returned, the government will attempt to do so, under the terms set forth below. If, after inspecting seized cellular telephone that the Court has authorized the government to search, the government determines that some or all of this equipment does not contain contraband or the passwords, account information, or

personally-identifying information of victims, and the original is no longer necessary to retrieve and preserve as evidence, fruits or instrumentalities of a crime, the equipment will be returned within a reasonable time, if the party seeking return will stipulate to a forensic copy's authenticity (but not necessarily relevancy or admissibility) for evidentiary purposes.